UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROLANDO RODRIGUEZ,
            Petitioiner, :

      v.              :  Civil Action No. 05-11521-RCL

LOIS RUSSO,
            Respondent, :

## BRIEF OF PETITIONER ROLANDO RODRIGUEZ

Now Comes, Rolando Rodrigues, the Petitioner in the above-
entitled action, who is proceeding pro se, and respectfully sub-
mits, "Brief of Petitioner Rolando Rodriguez". In support there-
of it is respectfully submitted.

### INTRODUCTION

The Suffolk County grand jury charged Rolando Rodriguez with
armed robbery and murder. A jury commenced on November 16, 1998.
On November 25, 1998, the jury returned verdicts of guilty on
armed robbery and felony murder. The Judge sentenced the Petition-
er to a term of life without parole on the felony murder convict-
ion, and 19 to 20 years on the armed robbery conviction, to run
concurrent with the life term.

A notice of appeal was duly filed. The case was entered in
the Supreme Judicial Court on September 24, 1999. The Court stay-
ed the appeal so the Petitioner could file a motion for a new
trial. The trial Judge held a non-evidentiary hearing on the mot-

1.

ion on December 13, 2000.

On March 12, 2001 the motion for a new trial was denied.    A
Notice of Appeal of the denial of the new trial motion was timely
filed, and the appeal was docketed in the Supreme Judicial Court
and consolidated with the direct appeal.

SUMMARY OF ARGUMENT

A review of the record will clearly demonstrate that Petition-
er was denied a fair trial and appeal.   In particular he was denied
his rights under the United States Constitution, Amendment Six. In
all criminal prosecutions, the accused shall enjoy the right to a
speedy and public trial, by an impartial jury of the State and
district wherein the crime shall have been committed, which dist-
rict shall have been previously ascertained by law, and to be in-
formed of the nature and cause of the accusation; to be confronted
with the witnesses against him; to have compulsory process for
obtaining witnesses in his favor, and to have the Assistance of
Counsel for his defence.   In the case at hand, Petitioner was not
provided with the above.

The Judge's instruction that the presumption of innocence may
begin to disappear when the Commonwealth begins to introduce evid-
ence, and that during the trial, the presumption may grow less and
less strong, failed to notify the jury that the defendant is pres-
umed innocent throughout the entire trial, and the presumption re-
mains until and unless the jury decides unanimously that the Comm-
onwealth has proved the defendant guilty of each and every element
of each charged offense beyond a reasonable doubt.

2

The judge's instruction to disregard the defendant's expert witness' testimony if the jurors found the assumptions upon which it was based were not proven, was erroneous and had the effect of shifting the burden of proof to the defendant to prove that he lacked the specific intent to commit the offenses, specifically, armed robbery.

The judge erred in failing to instruct the jury that the purpose of the expert witness's opinion was not relevant to the issue of consciousness of guilt. Further, the judge erred in failing to strike the expert's opinions during cross-examination because the opinions were not based on a reasonable degree of medical certainty.

The prosecutor's deceptive hypothetical and closing argument urging the jury to consider that Rolando Rodriguez wore a baseball hat as a disguise, to cover his scar; and tha the took a bag with him, evidencing his intent to rob the market was not supported by the evidence. Moreover, the prosecutor knew that grand jury witnesses had testified that the defendant/petitioner characteristically wore a bandanna or baseball hat to cover the scar on his forehead. The judge contributed to the error by allowing the prosecutor to refer to the bag in his closing argument, despite the judge's ruling that the bag would not be admitted into evidence as an exhibit.

In his opening statement and closing argument, the prosecutor impermissibly appealed to the jury's sympathy by harping on the

3

effect the victim's death had on her family. The prosecutorial errors, whether considered alone or in combination, were prejudicial because they unfairly bolstered the Commonwealth's case and disparaged the defendant's case.

Trial counsel rendered ineffective assistance of counsel by failing to object to erroneous and prejudicial jury instructions on the presumption of innocence and the use of assumed facts in questioning the expert witness; and failing to object and move to strike each of the prosecutor's references to the defendant's wearing a hat as evidence of his intent to disguise himself and the prosecutor's improper sympathy appeals.

The Court should use its power pursuant to the United States Constitution to grant Petitioner, Rolando Rodriguez's Writ of Habeas Corpus.

Petitioner is currently serving a Life sentence. He is proceeding pro se because he cannot afford a lawyer and the Courts will not provide him with a lawyer. Petitioner does not understand English very well and he does not understand the law. He has very limited access to the law library at his prison and when he does attend, no one will help him. The Massachusetts Department of Corrections failed to provide Petitioner with a lawyer or the tools (research material) to properly prepare his brief.

Petitioner is proceeding pro se, with the help and assistance of other inmates. All issues advanced herein are federal constitutional issues. All of the claims were reviewed on the

4

merits by the State Court.

## LAW AND ARGUMENT

In the case at hand, the Petitioner, Rolando Ror-
riguez is proceeding pro se, with the help and assist-
ance of other inmates. All issues advanced herein are
federal constitutional issues. All of the claims were
reviewed on the merits by the State Court. Rose v.
Lundy, 455 U.S. 509, 102 S.Ct. 1198 (1982); Duncan v.
Henry, 115 S.Ct. 887 (1995). The claims were fairly
presented to the State Courts. Picard v. Conner, 404
U.S. 270, 275 (1971); Gibson v. Scheidemantel, 805 F.2d
135, 138 (3rd Cir. 1986) and Santana v. Fenton, 683 F.
2d 71, 73 (3rd Cir. 1982) cert denied 459 U.S. 1115
(1983). The State Court was given a fair opportunity
to consider the arguments presented to the Federal Court.
Zicarelli v. Gary, 543 F.2d 466, 472 (3rd. Cir. 1976)
(en banc).

I.  THE JURY INSTRUCTION ON THE PRESUMPTION OF INNOCENCE
    SHIFTED THE BURDEN OF PROOF TO THE DEFENDANT IN VIOL-
    ATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE
    PROCESS OF LAW GUARANTEED BY THE UNITED STATES CON-
    STITUTION, AMENDMENT FOURTEEN AND THE MASSACHUSETTS
    DECLARATION OF RIGHTS, ARTICLE TWELVE, THEREBY CREAT-
    A SUBSTANTIAL RISK OF A MISCARRIAGE OF JUSTICE.

In re Winship teaches that the reasonable doubt
standard and the presumption of innocence principle are
two indispensable sides of the due process coin. 397 U.S.
358, 363-364 (1969).

5

"`The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.'" Commonwealth v. Healy, 15 Mass. App. Ct. 134, 136, rev. den. 388 Mass. 1103 (1983) (quoting Coffin v. United States, 156 U.S. 432, 453 (1895)).

The Appeals Court has strongly cautioned that "embellishment of the approved formulations of the presumption of innocence and the reasonable doubt standard is unnecessary and is to be avoided[,]" as variations of the approved formulations commonly "`excite both controversy and appellate litigation without any off-setting assurance that the attempted clarification is either necessary .... or successful ....'" Healy, 15 Mass. App. Ct. at 138 (quoting United States v. MacDonald, 455 F.2d 1259, 1263 (1st Cir.), cert. denied, 406 U.S. 962 (1972)).

After instructing the jury that the Commonwealth was required to prove the defendant guilty beyond a reasonable doubt, the judge stated,

> It is only when the Commonwealth begins to introduce its evidence that this

6

> presumption in favor of innocence may
> begin to disappear.  If the evidence
> against him goes in, the presumption
> may grow less and less strong, but is
> for you to determine, based upon all of
> the  evidence,  whether  or  not  the
> Commonwealth    has    overcome    that
> presumption.

(T.VI/54).  This was error.  "The presumption of

innocence continues throughout the entire case."

Commonwealth v. Kane, 19 Mass. App. Ct. 129, 139

(1984), rev. den. 394 Mass. 1101 (1985); Taylor

v. Kentucky, 436 U.S. 478, 483 n.12 (1978); cf.

Commonwealth v. Grant, 418 Mass. 76, 84 (1994)

(presumption  stays  with  defendant  unless  and

until evidence convinces jury of guilt beyond a

reasonable doubt).  "The defendant is presumed to

be  innocent  until  and  unless  the  jury  decide

unanimously that the Commonwealth has proved the

defendant  guilty  of  each  and  every  element  of

each charged offense beyond a reasonable doubt."

MA  Superior  Court  Criminal  Jury  Instructions,

Section 1.2, 1999 ed.

     The  instant  charge,  though  similar  to  that

in  Commonwealth v. Powers, 294 Mass. 59, 63

(1936),  omitted  crucial  language  approved  in

Powers and reflected in the MA Superior Criminal

Jury  Instructions.    In  Powers  and  the  Model

Instructions, the charge stresses (1) the jurors'

evaluation must be determined at the close of the

case; (2) must be unanimous; and

(3) must convince them beyond a reasonable
doubt.[8] These crucial points were lacking in the
instant charge.

"The presumption `serves as a focus on the
prosecutor's burden of producing evidence of
guilt and persuading the jury of the guilt beyond
a reasonable doubt.'" Healy, 15 Mass. App. Ct.
at 137 (quoting Commonwealth v Boyd, 367 Mass.
169, 188 (1975)). "The impact of the remark
probably was not lessened by the reference to
guilt beyond a reasonable doubt. At best the ...
instruction was a goulash." Kane, 19 Mass. App.
at 139-40.

Therefore, the Court should grant the
defendant a new trial.

II.   THE JURY INSTRUCTION ON THE EVALUATION OF
      EXPERT WITNESS TESTIMONY WAS ERRONEOUS AND
      SHIFTED THE BURDEN OF PROOF TO THE
      DEFENDANT, IN VIOLATION OF THE DEFENDANT'S
      CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW
      GUARANTEED BY THE UNITED STATES
      CONSTITUTION, AMENDMENT FOURTEEN AND THE
      MASSACHUSETTS DECLARATION OF RIGHTS, ARTICLE

---

[8]"...and if, at the conclusion of the case, the
Commonwealth has convinced you beyond a
reasonable doubt of his guilt, then the
presumption has disappeared ..." Powers, 294
Mass. at 63.   The Court stressed that "[t]he
charge gave the defendant the benefit of the
continuance of the presumption of innocence until
it disappeared when the Commonwealth convinced
the jury beyond a reasonable doubt of the
defendant's guilt." Id. at 64.

TWELVE, THEREBY CREATING A SUBSTANTIAL RISK OF A MISCARRIAGE OF JUSTICE.

"It is the duty of the trial judge to instruct the jury correctly on the law pertinent to the issues in the case." Commonwealth v. Gladney, 34 Mass. App. Ct. 151, 160 (1993). Furthermore, due process is violated when a jury charge has the effect of relieving the prosecution of proving beyond a reasonable doubt every fact necessary to constitute the crime charged. Francis v. Franklin, 471 U.S. 307, 313 (1985); In re Winship, 397 U.S. 358, 364 (1970); Commonwealth v. Drumgold, 423 Mass. 230, 255-56 (1996). Correspondingly, it is solely the prosecution's burden to prove each element of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) (articulating directed verdict standard that satisfies due process guarantees); Commonwealth v. Latimore, 378 Mass. 671, 677 (1979) (same).

The defense presented the expert testimony of Dr. Alan Brown, a clinical and forensic psychologist (T.V/125). Dr. Brown explained to the jury the concept of "malingering" (T.V/126-27,142-43); and the effect of crack cocaine, marijuana and alcohol, particularly in combination, on an individual's ability to form a

9

specific intent (T.V/138-140). Dr. Brown testified that in his opinion, to a reasonable degree of medical certainty, the defendant did not exhibit the characteristics of a person who is malingering (T.V/142-43). Assuming a person had ingested a large quantity of crack cocaine, marijuana and alcohol over an extended period of time, while lacking in food or sleep, Dr. Brown opined it would be unlikely that that person would be capable of forming a specific intent to rob or kill (T.V/145-47). Dr. Brown further opined, to a reasonable degree of medical certainty, that that person's ability to think through problems, make rational choices, or remember his thoughts and actions would be impaired (T.V/144-45). Defense counsel based his hypotheticals on assumed facts presented during the defendant's testimony (see, e.g., T.V/143-47).

The Judge instructed the jurors that they should disregard the expert's opinion,

> if you find the assumptions upon which it is based have not been proven.

(T.VI/64). The foregoing instruction is erroneous and had the effect of shifting the burden of proof to the defendant to prove that he lacked the specific intent to commit the

offenses, specifically, armed robbery.    By contrast, MA Superior Court Criminal Jury Instructions, 1999 ed. provide for the following instruction:

> This witness offered you an opinion that was based on certain assumed facts. It is permissible for a witness to testify in that form because it is your responsibility--and not the witness's--to determine from all the evidence what the facts are.
> . . .
> As I have told you, you are the sole judges of the truth of the facts in the case. If you believe that one or more significant facts on which the witness was asked to base his or her opinion on [sic] are not true, then his or her opinion is not relevant to the facts of this case and you should not consider the opinion in your deliberations.

Section 4.7.1, Where the Expert Gives Opinion Based on a Hypothetical Question; accord Commonwealth v Taylor, 327 Mass. 641, 649 (1951). It is one thing to notify the jurors that they are the sole judges of the credibility of the witnesses, including the facts underlying the expert's opinion; Commonwealth v. Richardson, 423 Mass. 180, 184-85 (1996); it is another to leave them with the impression that the defendant has the burden of proving the facts underlying the opinion.    Because the facts arose from the defendant's testimony, the error tainted not only Dr. Brown's testimony, but the defendant's.    Put

11

otherwise, the instructional error tainted the defendant's entire case, and informed the jury that the defendant was required to prove that he was not guilty of the charged offenses.

In attempting to prove that the defendant had the specific intent to steal, it was the Commonwealth's burden to prove that the defendant was not impaired by drugs, alcohol, or any combination thereof. <u>Commonwealth v. Gilchrist</u>, 413 Mass. 216, 222-23 (1992).[9]    Dr. Brown's testimony went to the heart of the impairment issue[10], and to the heart of the defense.[11]    Yet

_____

[9]The Judge did instruct the jury that it was the Commonwealth's burden to prove the defendant was not impaired by drugs, alcohol, or any combination thereof (T.VI/83,92). However, evaluation of the expert's opinion and its underlying assumptions was a separate and distinct preliminary determination to be made on the way to the jury's determination of the impairment issue. "At a minimum, the[ ] instructions must have left the jury badly confused." <u>Commonwealth v. Wood</u>, 380 Mass. 545, 548 (1980).

[10]The prosecutor argued, "the issue here, Ladies and Gentlemen, is what the Defendant knew when he did it." (T.VI/37).

[11]Defense counsel argued, "what this case is about very simply is, and you'll hear the instructions by Judge Quinlan, this case is about what was his mental state at the time of this incident at Steven Jr. Market." (T.VI/7). "When I put the psychiatrist on the stand, Doctor Brown, I thought it might help to put an expert on the stand to tell you in is [sic] opinion -- He's a psychiatrist, about one's mental state when you consume alcohol, marijuana, crack

the instruction concerning Dr. Brown's testimony shifted the burden of proof to the defendant and relieved the Commonwealth of having to prove each element of the offense beyond a reasonable doubt.

Therefore, there should be a new trial.

III. THE JUDGE ERRED IN FAILING TO GIVE THE JURORS A CURATIVE INSTRUCTION CONCERNING THE PURPOSE OF THE EXPERT WITNESS'S TESTIMONY AND THE EXPERT WITNESS'S TESTIMONY ON CROSS-EXAMINATION FAILED TO SATISFY THE PROPER STANDARD, IN VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW GUARANTEED BY THE UNITED STATES CONSTITUTION, AMENDMENT FOURTEEN AND THE MASSACHUSETTS DECLARATION OF RIGHTS, ARTICLE TWELVE.

"It is the duty of the trial judge to instruct the jury correctly on the law pertinent to the issues in the case." Commonwealth v. Gladney, 34 Mass. App. Ct. 151, 160 (1993). Furthermore, due process is violated when a jury charge has the effect of relieving the prosecution of proving beyond a reasonable doubt every fact necessary to constitute the crime charged. Francis v. Franklin, 471 U.S. 307, 313 (1985); In re Winship, 397 U.S. 358, 364 (1970); Commonwealth v. Drumgold, 423 Mass. 230, 255-56 (1996).

---

cocaine. What does it do to your decision-making process? What does it do to your conscious state? What does it do to form [sic] the specific intent?" (T.VI/13).

13

A witness may testify to his or her opinion
in an area where he or she has special training
or experience.    Commonwealth v. Federico, 425
Mass. 844, 847 (1997) (and cases cited); Proposed
Mass. R. Evid. 702.  A witness may not testify to
matters within the common knowledge of the
jurors, and may not comment on another witness'
credibility.    Federico, 425 Mass. at 847-48;
Commonwealth v. Montanino, 409 Mass. 500, 504
(1991); Wing v. Commonwealth, 359 Mass. 286, 288
(1971).

      A.   The Expert Witness' Testimony Concerning
           Consciousness Of Guilt Was Impermissible
           And Prejudicial.

In cross-examining Dr. Brown, after posing
several hypotheticals comprised of assumed facts,
the prosecutor asked Dr. Brown for his expert
opinion concerning a person's capacity to plan
something (T.V/152-54); whether such actions
"would be consistent with somebody who knew what
he was doing" (T.V/155); and "consistent with an
individual who understood what he had just done?"
(T.V/156).

Trial counsel objected, but in the cited
instances, was overruled (T.V/152-53,155,156).
At sidebar, trial counsel grounded his
objections, first, on the basis that the

14

hypotheticals did not address a person's capacity to form a specific intent, and, further, that the prosecutor asked Dr. Brown <u>not to consider the person's mental state</u>, "which is what this case is all about." (T.V/157-8).

> THE COURT: Let me tell what my concern is. Your focus and your questions is [sic] on evidence which would be in the nature of consciousness of guilt.
>
> MR. POWERS (the prosecutor): Well his understanding of what he had done.
>
> THE COURT: No, no, no. We're talking about his intent at the time the crime was committed, right? By the emphasis on consciousness of guilt, this is what my concern is and why I called your here. By emphasizing that point, my problem is I have to instruct and make sure they don't convict on consciousness of guilt.

(T.V/158).

The judge failed to strike the expert's testimony which constituted evidence of consciousness of guilt, and she failed to provide a curative instruction or a consciousness of guilt instruction during the prosecutor's cross-examination of Dr. Brown.[12] Where expert testimony is admitted, "it is good practice for the trial judge to give carefully limiting

---

[12]The Judge did include a consciousness of guilt instruction during her final charge (T.VI/59-60). However, she did not relate it back to the expert's improper testimony.

15

instructions to the jury regarding the proper function and use of such evidence." Federico, 425 Mass. at 850 n.10. The expert testimony was inadmissible on the issue of the defendant's alleged consciousness of guilt. See, e.g., Federico, supra (person with special skills and training may testify on matters not within common knowledge of jurors). The jurors were capable of assessing whether the defendant was motivated by consciousness of guilt in his attempts to flee after realizing that he had was the individual at the market where the victim was killed. Cf. Commonwealth v. Nerette, 432 Mass. 534, 538 (2000) (psychologist's opinion would not have aided jury in deciding voluntariness issue).

Furthermore, as argued by trial counsel, the prosecutor asked Dr. Brown to disregard the defendant's state of mind when considering the hypotheticals, despite that the purpose of Dr. Brown's testimony was to render an opinion on the defendant's state of mind at the time of the incident. The hypotheticals posed and Dr. Brown's responses, without consideration of state of mind, constitute matters within the common knowledge of the jurors and, therefore, they should have been striken. See Federico, supra.

16

A strong potential existed for the jury to confuse the defendant's April 13th intent with his actions two and one-half days later, which conceivably could be viewed as motivated by consciousness of guilt. The prosecutor compounded the confusion by asking the jury whether the defendant's attempts to avoid detection "were consistent with somebody who knew what he did, remembered what he had done ..." (T.VI/46-47). The ultimate issue was not whether the defendant "knew" what he was doing, but whether he had the specific intent to steal. See United States v. Bailey, 444 U.S. 394, 402-05 (1980) (loosely equating general intent with knowledge and specific intent with purpose); Commonwealth v. Sires, 413 Mass. 292, 299 (1992) (distinguishing knowledge and specific intent in malice considerations).

### B. The Expert's Opinions Presented During Cross-Examination Were Not Based On The Requisite Level Of Certainty.

To be admissible, psychiatric testimony consisting of an expert opinion must show a probability; Toubiana v. Priestly, 402 Mass. 84, 91 (1988); Swartz v. General Motors Corp., 375 Mass. 628, 632-33 (1978); "hence the frequently used rubric `Do you have an opinion to a

17

reasonable medical [   ] certainty ... ?'" Young,
Pollets   &   Poreda,   Evidence   (Massachusetts
Practice  Series,  Vol.  19)  sec.702.2  at   476
(1998).   Trial counsel objected to Dr. Brown's
cross-examination testimony on the second ground
that the opinions expressed were not based on a
reasonable degree of medical certainty (T.V/157).
The   Judge   never   addressed   this   aspect   of
counsel's  objection,  and  did  not  strike  the
testimony (T.V/157-8).

       Accordingly, the Commonwealth was permitted
to provide an expert opinion, without any regard
to a person's mental state, that the defendant's
conduct before, during and after the incident
could be consistent with someone who "knew what
he was doing" and "understood what he had just
done," respectively (T.V/154-56); and could be
consistent with someone with who "was planning
something." (T.V/152-53).   "`A mere guess or
conjecture by an expert witness in the form of a
conclusion from basic facts that do not tend
toward that conclusion any more than toward a
contrary  one  has  no  evidential  value.'"
Toubiana, 402 Mass. at 91 (quoting Kennedy v. U-
Haul  Co.,  360  Mass.  71,  73-74  (1971)); see
Goffredo v. Mercedes-Benz Truck Co., 402 Mass.

18

97, 103 (1988) (no evidential value where opinion expressed in terms of possibilities rather than probabilities).[13]

Because the Commonwealth was permitted to present incompetent and irrelevant evidence, which was admitted as expert opinion and went to the heart of the issue before the jury, the Court should grant a new trial.

IV.   THE PROSECUTOR IMPERMISSIBLY ASSUMED FACTS NOT IN EVIDENCE AND NOT INFERABLE FROM THE EVIDENCE, AND THAT HE KNEW WERE UNTRUE, WHEN QUESTIONING THE EXPERT WITNESS AND IN HIS CLOSING ARGUMENT; AND APPEALED TO THE JURY'S SYMPATHY, IN VIOLATION OF THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW GUARANTEED BY THE UNITED STATES CONSTITUTION, AMENDMENT FOURTEEN AND THE MASSACHUSETTS DECLARATION OF RIGHTS, ARTICLE TWELVE.

A.   The Prosecutor Knowingly Misled The Jurors Concerning Material Matters.

Prosecutors must limit their arguments to facts in evidence and inferences that may reasonably be drawn from the evidence, and refrain from misstating the evidence. Commonwealth v. Good, 409 Mass. 612, 623, 625

---

[13]Granted, the prosecutor is permitted to explore, on cross-examination, the weakness of the expert's opinion; Commonwealth v. Amaral, 389 Mass. 184, 192 (1983); which he did (see, e.g., T.V/149,151-52). However, such exploration is different than presenting hypotheticals for the purpose of eliciting an expert opinion, which the Commonwealth was permitted to do three times over objection (T.V/152-56).

19

(1991). Where improper prosecutorial statements constitute prejudicial error, the conviction must be reversed. <u>Commonwealth v. Santiago</u>, 425 Mass. 491, 500 (1997). A prosecutor's summation "shall not and must not ... infringe or denigrate constitutional rights." <u>Commonwealth v. Smith</u>, 387 Mass. 900, 903 (1983). The prosecutor's missteps infringed on Rodriguez's federal and state constitutional rights to be convicted solely on [competent] evidence of each and every element of the crimes charged beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (<u>citing</u> <u>In re Winship</u>, 397 U.S. 358 (1970)); <u>Commonwealth v. Latimore</u>, 378 Mass. 671, 677 (1979).

In a hypothetical question posed to Dr. Alan Brown, the prosecutor asked Mr. Brown,

> Would it be fair to say that a person who leaves an apartment, goes into a kitchen, grabs a knife, <u>takes a bag, takes a hat</u> and heads out the door, <u>would that be consistent with somebody who has the capacity to intend a crime, commit a crime?</u> ... <u>would that be consistent with somebody who was planning something?</u>

(T.V/152-53) (emphasis added). Over defense counsel's objection (T.V/152), Dr. Brown

responded, "Well, it could be."[14]   (T.V/152).   In

his closing, the prosecutor argued,

> ... and I submit to you, Ladies and Gentlemen, the facts also are overwhelming that the Defendant knew damned well what he was doing.  He entered the store with a knife and <u>a bag, and a hat for a disguise, the tools of the trade of an armed robber. This was a deliberate act.</u>   (T.VI/37) (emphasis added).

> <u>He took the baseball hat.  He took the bag,</u> the tools of the trade of a robbery, and he headed out the door of 158 Shawmut Street ...

> At this point, the judge overruled defense counsel's objection (T.VI/42) (emphasis added).

> I ask you ladies and Gentlemen, when an individual walks into a store armed with a knife and <u>a bag of sufficient room to carry money, and a hat to cover a distinctive scar over his eye,</u> is that consistent with somebody who doesn't know what he is doing, or <u>is that consistent with somebody who knew exactly what he was doing, what he set out to do, and what he needed to do to accomplish that act?</u> (T.VI/43-44) (emphasis added).

        1.   The baseball hat

There was no evidence that the defendant

purposely wore the hat on the night of the

incident to disguise himself.   While in some

circumstances, that proposition might be

inferable from the evidence, in this case, the

---

[14]In the preceding argument, the defendanat contends that the expert's opinion failed to meet the requisite level of certainty.

proposition was unfair and deceptive.    In fact, the  prosecutor  knew  that  the  defendant characteristically wore a bandanna and a hat to cover his scar.   At the grand jury, Mr. Powers asked   Carmen   Febres,   who   lived   with   the defendant's cousin, in whose home the defendant was staying, whether the defendant usually wore a bandanna or headband.   (R.17,18-19).   Ms. Febres responded that the defendant usually wore the bandanna or a "hat warmer" down to his eyebrows to cover a scar on his forehead (R.19).    Juan Rodriguez, the defendant's cousin, told Mr. Powers at the grand jury that he had seen the defendant wearing Juan's Red Sox hat in the past (R.20,21-22).  Moreover, at trial, Juan Rodriguez testified that he noticed that his hat was missing at some unspecified time prior to April 13, 1997 (T.III/155-56).

### 2.   The bag

The so-called bag was admitted solely for identification (T.III/49).   There was no evidence connecting the bag to the defendant.    No one testified they saw the defendant with the bag, and the bag was never admitted into evidence. Norma Rosado did not see the assailant carrying a bag into the market (T.II/49).   The victim, in an

22

excited utterance, identified only the hat and knife as belonging to the assailant (T.I/101). Febres had last seen the same or a similar bag when she and Santiago lived on Wales Street, in Dorchester, before March 6, 1997 (T.III/48-49, 50). Santiago testified she obtained the bag at a conference; she gave no indication if and when the bag was missing (T.III/127-28). Then, the prosecutor asked that the bag be marked as an exhibit (T.III/128). Defense counsel objected (T.III/128). The judge ruled that the item would remain as Exhibit A for identification (T.III/128).

After the evidence was closed, the prosecutor renewed his request that the bag be admitted into evidence, and that he be permitted to refer to the bag in closing (T.VI/3-4). The only connection he could make concerning the bag was that Pimental was shown a photograph and asked whether he recognized the bag in the photograph; and that Pimental did not recognize the bag (T.VI/3). The judge refused to admit the bag into evidence, but ruled the prosecutor could refer to the bag in the photograph during his closing argument (T.VI/3).

Accordingly, some fault for the error lies

with the judge's ruling that the prosecutor, during closing argument, could refer to the bag in the photograph. Significantly, the judge's contemporaneous ruling that the bag would not be admitted as an exhibit (See T.III/128), underscores her contemporaneous awareness of the absence of a sufficient connection between the bag, the defendant, and the charged offenses.

Even if the judge's subsequent ruling was not error, there was error in the failure of the judge, prosecutor or defense counsel to clarify and narrow the context in which the prosecutor could refer to the bag. Instead, the prosecutor took the argument beyond the limits warranted by the evidence by (1) arguing that the defendant's taking the bag and entering the market with it was evidence of his intent to rob the market; and (2) using that premise in soliciting an opinion from the expert witness. This was prejudicial error.

B.   The Prosecutor Improperly And Prejudicially Appealed To The Sympathy Of The Jury.

It is well-settled that a prosecutor may not attempt to arouse jury sympathy or prejudice, or "sweep the jurors beyond a fair and calm consideration of the evidence." Commonwealth v.

24

Graziano, 368 Mass. 325, 332 (1975); Commonwealth
v. Sevieri, 21 Mass. App. Ct. 745, 754 (1986);
accord United States v. Capone, 683 F.2d 582 (1st
Cir.1982). Appeals to sympathy, by their nature,
often "do not misstate any piece of evidence, but
rather obscure the clarity with which the jury
would look at the evidence and encourage the jury
to find guilt even if the evidence does not reach
the level of proof beyond a reasonable doubt."
Santiago, 425 Mass. at 501.

In his opening statement, the prosecutor
exploited the sympathy appeal of the case as
follows:

> By all accounts, April 13th of 1997
> started off like any other day for
> Kenia Melo and her family. That
> morning when they came to open the
> store, they had no idea that within a
> few short hours that day, that normal
> Sunday morning, a morning not unlike
> any morning they had come to open the
> store, would turn into that family's
> worst nightmare. Within a few short
> hours Juan Luis Pimental would lose his
> wife. The children would lose their
> mother, and Kenia Melo would lose her
> life. (T.II/10).
> . . .
> Earlier that morning Juan Luis Pimental
> took his young son Steven and they went
> downstairs to the basement to take a
> nap. Little Natalia, the seven-year-
> old girl, decided she wanted to stay
> upstairs with her mom, so she remained
> behind the counter of that store,
> sleeping on a comforter. It was about
> seven minutes before a man would enter
> that store and change that family's
> life forever. (T.II/11-12).

A trial is no place for this kind of drama. "A mistrial may be appropriate `where the force of the prosecutor's opening remarks was overwhelmingly prejudicial and likely to leave an indelible imprint on the jurors' minds.'" Commonwealth v. Hoilett, 430 Mass. 369, 372 (1999) (quoting Commonwealth v. Fazio, 375 Mass. 451, 455 (1978)). Unfortunately, trial counsel failed to request a mistrial or any curative instruction from the judge, despite the obvious prejudicial effect of the prosecutor's error.

The prosecutor continued with the same theme in his closing argument.

> But what happens when you're in the right place at the right time, and you none the less meet a violent end? That's the story of Kenia Melo, a 32-year-old store clerk who was cut down inside her very own convenience store in Chelsea, a store that she owned with her husband for about two years, a store that she had worked in countless other times before, a store that she thought nothing of bringing her family there, her daughter, her son, a place where she thought nothing about working behind that counter alone, a place that Juan Luis Pimental thought nothing about going downstairs and taking a nap. Yet Kenia Melo was brutally murdered inside her convenience store, fatally stabbed over what ended up being a mere 60 dollars in U.S. Currency. (T.VI/34).
> . . .
> The defendant testified that he came to this country because he wanted to make a better life for himself. Well you know, so did Kenia Melo. She,

26

> too, was Hispanic. She came to this
> country, married, three children, owned
> a store. She functioned in a city.
> The Defendant apparently could not, but
> unfortunately for her, she was in the
> right place at the right time.
> (T.VI/49).

Although "[t]he Commonwealth may `tell the jury something of the person whose life [has] been lost in order to humanize the proceedings[;]'" Commonwealth v. Degro, 432 Mass. 319, 323 (2000) (quoting Commonwealth v. Santiago, 425 Mass. 491, 495 (1997)); the prosecutor here went too far. His opening and closing went beyond humanizing Kenia Melo by harping on how her normal and upright life, and that of her husband and two children, were shattered by acts committed by the defendant. The prosecutor also improperly and unfavorably compared Ms. Melo's immigrant experience with that of the defendant.

> Prosecutors should bear in mind that
> when the question is whether the
> defendant committed the crime,
> luxuriating in the ghastliness of the
> crime and the suffering of the victim
> does not help to answer the question.
> Such irrational and irrelevant comments
> "only serve to make it less likely that
> the jury will return a verdict based on
> fair, calm consideration of the
> evidence." (citation omitted).

Commonwealth v. McLeod, 30 Mass. App. Ct. 536, 538-39 (1991) (emphasis in original).

27

The prosecutor's opening statement and closing argument were so far out-of-bounds and so prejudicial that the convictions should be vacated and a new trial granted.

C. <u>The Combined Effect Of The Errors Requires Reversal</u>.

Appellate courts will determine the prejudicial effect of prosecutorial missteps by looking at them collectively; <u>Commonwealth v. Loguidice</u>, 36 Mass. App. Ct. 940 (1994); and by considering the entire closing argument, the judge's instructions, and the evidence presented at trial. <u>Commonwealth v. Walker</u>, 421 Mass. 90, 104 (1995).

The prosecutor's deceptive hypothetical and closing argument urging the jury to consider that the defendant's wearing a hat as a disguise to cover his scar; and taking a bag with him; were evidence of his intent to rob the market, went to the heart of the case -- whether the defendant had the specific intent to rob the market.[15] The appeals to the jury's sympathy were like adding

---

[15]Reference to the hat and bag as evidence of the specific intent to rob cannot be considered harmless simply because the there was evidence that the defendant carried a knife into the market. It is conceivable that a young man in the city would carry a knife for protection, without any intention of using it in a robbery.

gasoline to an already raging fire. The erroneous jury instructions on evaluation of expert testimony and the presumption of innocence further aggravated the missteps.

Therefore, there should be a new trial.

V.  BY FAILING TO OBJECT TO AND MOVE TO STRIKE CERTAIN ERRORS AT TRIAL, AND FAILING TO REQUEST CURATIVE INSTRUCTIONS, TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE DEFENDANT'S RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES CONSTITUTION, AMENDMENTS SIX AND FOURTEEN AND THE MASSACHUSETTS DECLARATION OF RIGHTS, ARTICLE TWELVE.

The measure of ineffective assistance is whether counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). A defendant must make "some showing that better work might have accomplished something material for the defense." Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977). He must show ". . . how the actions which he claims his counsel should have taken could have made a difference." Commonwealth v. Frisino, 21 Mass. App. Ct. 551, 552 (1986); see also Strickland v. Washington, 466 U.S. 668 (1984) (defining similar standard under Sixth Amendment to United States Constitution). Moreover,

29

Case 1:05-cv-11521-RCL    Document 17-2    Filed 06/27/2006    Page 7 of 16

> [A] defendant need not show that
> counsel's deficient conduct more likely
> than not altered the outcome in the
> case. . . The result of a proceeding
> can be rendered unreliable, and hence
> the proceeding itself unfair, even if
> the errors of counsel cannot be shown
> by a preponderance of the evidence to
> have determined the outcome.

Strickland, 466 U.S at 693.[16]

Trial counsel failed to object to the erroneous and prejudicial jury instructions on the presumption of innocence and the use of assumed facts in questioning the expert witness. If he had brought the errors to the judge's attention, it is likely she would have corrected them.

Further, trial counsel failed to object and move to strike the prosecutor's reference to the defendant wearing a hat as evidence of his intent to disguise himself, although he did object to a portion of the argument (T.VI/42). Counsel knew or should have known that the grand jury testimony belied the prosecutor's claim. If he had notified the judge of the error, she could have stricken the improper references and provided the jury with curative instructions.

Trial counsel also failed to object and move

---

[16]Trial counsel's asserted errors are presently evident from the record. Commonwealth v. Erdley, 430 Mass. 149, 150 & n.1 (1999).

to strike the prejudicial sympathy appeals in the prosecutor's opening statement and closing argument. Accordingly, the judge did not cure the errors. Cf. Commonwealth v. Weaver, 400 Mass. 612, 616 (1987) (trial judge's strong and specific curative instruction removed any potential prejudice resulting from prosecutor's improper remarks); Commonwealth v. Pavao, 34 Mass. App. Ct. 577, 581 (1993) (impact of improper final argument often mitigated by judge's forceful instructions that argument was inappropriate and should be disregarded).

Regardless of the over-all quality of trial counsel's representation, his omissions constitute mistakes so serious in their effect that they amount to ineffective assistance of counsel, "whether ... regarded as simple oversight or as ... tactical judgment that was `manifestly unreasonable.'" Commonwealth v. Rossi, 19 Mass. App. Ct. 257, 260 (1985) (quoting Commonwealth v. Adams, 374 Mass. 722, 728 (1978)). There should be a new trial.

VI. THE COURT SHOULD EXERCISE ITS POWER PURSUANT TO G.L. C.278, SECTION 33E TO PREVENT A MISCARRIAGE OF JUSTICE.

G.L. c.278, section 33E empowers this Court to consider the whole case broadly, the facts as

well as the law, to determine whether there was a miscarriage of justice. Commonwealth v. Jefferson, 416 Mass. 258, 265-66 (1993). In reviewing the whole case, the Court may consider evidence excluded from the jury's consideration. Commonwealth v. Mahnke, 368 Mass. 662, 701-02 & n.47 (1975).

This Court also considers whether an error by defense counsel, the prosecutor, or the judge likely influenced the jury's conclusion. Commonwealth v. Hung Tan Vo, 427 Mass. 464, 469 (1998). "Under this more favorable standard of review, [the Court] consider[s] a defendant's claim `even if the alleged error on the part of trial counsel does not constitute conduct falling "measurably below" that of "an ordinary fallible lawyer."'" Commonwealth v. Hardy, 426 Mass. 725, 730 (1998) (quoting Commonwealth v. MacKenzie, 413 Mass. 498, 517 (1992)).

Each of the foregoing errors, all constitutionally based, go to the heart of the defense -- that based on his mental impairment caused by his consumption of alcohol, marijuana and crack cocaine, the defendant was unable to form the requisite mental state for armed robbery and, thereby, felony murder. See Commonwealth v.

McDermott, 393 Mass. 451, 460-61 (1984) (error in jury instructions most important factor to exercise sec.33E power, but defendant's age, mental capacity and substance abuse problems also relevant); Commonwealth v. Kinney, 361 Mass. 709, 713 (1972) (reduction of verdict to manslaughter where defendant's conduct result of spontaneous action rather than premeditation); Commonwealth v. Ransom, 358 Mass. 580, 583 (1971) (verdicts of manslaughter entered where evidence that defendant confused and frightened).

There was no evidence to support the Commonwealth's claim that the defendant wore the baseball hat to disguise himself for purposes of the robbery. Yet the jurors surely considered this factor in returning their verdict. In fact, the defendant usually wore a baseball hat or bandana to cover his scar (R.18-19). Deprived of this highly relevant information, the jurors were unable to render a true and just determination of guilt. There was no evidence linking the bag to the defendant at the time of the incident. Yet the jurors surely considered the bag in returning their verdict.

"In deciding, under G.L. c.278, sec. 33E, whether an error in a jury instruction created a

33

substantial risk of a miscarriage of justice, a new trial is called for unless the Court is substantially confident that, if the error had not been made, the jury verdict would have been the same." **Commonwealth v. Ruddock,** 428 Mass. 288, 292 n.3 (1998). The erroneous jury instructions on the presumption of innocence and the evaluation of expert witness testimony were so central and prejudicial to the ultimate issues so as to erode substantial confidence that if the erros had not been made, the jury would have returned guilty verdicts.

Other than the instant convictions, the defendant has no prior convictions (T.IV/90). He was the victim of an extremely abusive childhood, and came to the Commonwealth in hopes of getting a fresh start (T.V/7-9,11).

Therefore, to prevent a miscarriage of justice this Court should order a new trial or direct the entry of a verdict of a lesser degree of guilt.

Furthermore, the Court erred when they denied my Motion for Appointment of Counsel, Title 18 U.S.C. §3006A(2)(B) authorizes the appointment of counsel for an indigent party such as Petitioner Rolando Rodriguez, in cases seeking relief under 28 U.S.C.

34

§2241, §2254 or §2255.   Funds for representation
are payable as prescribed in Criminal Justice Act.
In the case Counsel should have been appointed pur-
suant to 18 U.S.C. §3006A(2)(B) which proveded if
the Court determines the "interests of justice so
require".   The Petitioner should have been appointed
counsel and it was an abuse of discretion not to
appoint counsel.   **Dellenbach v. Hanks,** 76 F.3d 820,
823 (7th Cir. 1996), **cert.denied.** 519 U.S. 894 (1996);
**Jackson v. Coalter,** 337 F.3d 74 (1st. Cir. 2003).

Petitioner is qualified for appointment of
counsel, he is indigent and exceptional circumstances
exist, and in particular the fact that Petitioner can-
not speak English.   The denial of counsel will result
in fundamental unfairness impinging on the Petitioner's
due process rights. **DesRosiers v. Morgan,** 949 F.2d 15,
23 (1st Cir. 1991) and **Manisy v. Maloney,** 283 F.Supp.
2d 307, 317 (D.Mass. 2003).   In determing whether there
are exceptional circumstances sufficient to warrant the
appointment of counsel, a Court must examine the total
situation, focusing on the merits of the case, the com-
plexity of the legal issues, and the litigant's ability
to represent himself.   **DesRosiers,** 949 F.2d at 23-24.

Petitioner provided the Court with a bases for
appointment of counsel, and demonstrated that he cannot

35

afford to retain a lawyer on his own.   See Declaration
of Petitioner, Rolando Rodriguez.

Moreover, prison officials refused to help or
assist Petitioner.   The law library is deficient, with
limited access and no one able to assist Petitioner.

The Supreme Court has held that prison officials
must "must assist inmates in the preparation and filing
of meaningful legal papers by providing prisoners with
adequate assistance from persons trained in the law.
**Bounds v. Smith,** 430 U.S. 817, 828, 97 S.Ct. 1491
(1977).

## CONCLUSION

For the foregoing reasons, whether considered
separately or in combination, the Court should vacate
the conviction and remand the case for a new trial.   In
the alternative, Rolando Rodriguez respectfully moves
the Court to issue a Writ of Habeas Corpus discharging
him from confinement.

Dated:   June 22 , 2006.

Respectfully submitted,

Rolando Rodriguez, w-65630
SBCC
P. O. Box 8000
Shirley, MA 01464

36

## DECLARATION OF ROLANDO RODRIGUEZ

I, Rolando Rodriguez, declare and state under penalty of perjury the following is true and correct.

1.  I am the Petitioner in this action.

2.  I raised meritorious issues in the Petition for a Writ of Habeas Corpus for a prisoner in State custody filed pursuant to 28 USC § 2254.

3.  I am without funds to hire a lawyer.

4.  The issues involved in this case are complex.

5.  I cannot speak English well.

6.  I do not understand what I read.

7.  I have no knowledge of the law.

8.  I filed several motions for appointment of counsel with the Court pursuant to 18 USC § 3006A(a)(2)(B) requesting appoint-ment of counsel.

9.  The Court denied my motions/requests for appointment of counsel.

10.  I wrote to and contacted many lawyers in the Boston area seeking assistance with filing this brief.

11.  No lawyer was willing to represent me.

12.  I seeked help and assistance from family and friends in obtaining a lawyer.

13.  Family and friends were unable to help me obtain a law-yer.

14.  I went to the law library at my jail to seek help and assistance in preparing this brief.

15.  No one was able to help or assist me with my research work and brief.

16.  I requested help and assistance from the prison admin-tration in obtaining a lawyer or helping me research and prepare my brief.

17.  Prison officials refused to help and assist me in pre-paring this brief.

18.  I filed a grievance with the prison about being denied access to the Court.  It is attached.

19.  I am being denied access to the Court.

20.  My rights are being violated under the First Amendment and Sixth Amendment, Due Process Clause, Equal Protection Clause and Immunities Clause of Article IV of the Constitution.

21.  The prison law library is inadequate.

22.  I was not provided Court access that was "adequate, mean-ingful and effective.

Dated:  June 19, 2006

## CERTIFICATE OF SERVICE

I, Rolando Rodriguez, hereby certify that a true copy
of **Brief of Petitioner Rolando Rodriguez** was served upon
Jonathan Ofilos, Assistant Attorney General, One Ashburton
Place, Boston, MA 02108-1598, on June  22  , 2006 by de-
positing a copy in the SBCC mail box for delivery by first
class mail, postage prepaid.

Dated:  June  22 , 2006.

Rolando Rodriguez