UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
ROLANDO RODRIGUEZ,                  )
              Petitioner            )
                                    )
       v.                           )      CIVIL NO. 05-11521-RCL
                                    )
LOIS RUSSO,                         )
              Respondent            )
_____)
```

MEMORANDUM AND ORDER ON
PETITION FOR HABEAS CORPUS RELIEF

LINDSAY, District Judge.

Before the court is the petition of Rolando Rodriguez (the "petitioner") for habeas corpus relief from a Massachusetts state court judgment of conviction of murder in the first degree arising out of the homicide of a convenience store operator during the course of a robbery. The petition was filed pursuant to 28 U.S.C. § 2254. The petitioner raises five grounds for his claim for habeas relief: (1) that the trial court instructed the jury regarding the presumption of innocence in such a way as to shift the burden of proof to the petitioner; (2) that the trial court instructed the jury regarding the evaluation of expert testimony in such a way as to shift the burden of proof to the petitioner; (3) that the trial court failed to give a curative instruction concerning the purpose of an expert witness's testimony and admitted expert testimony that failed to satisfy the proper standard for such testimony; (4) that the trial court allowed the prosecutor impermissibly to assume facts not in (or inferable from the) evidence during cross-examination of an expert witness and during closing and to appeal improperly to the jury's sympathy; and (5) that the petitioner's right to effective counsel was violated because his trial counsel failed to object to and move to strike improper trial evidence and failed to request certain curative instructions. The respondent

contends that the petition should be denied because it contains unexhausted and procedurally defaulted claims, and because the state court's adjudication was neither contrary to nor an unreasonable application of clearly established federal law as pronounced by the Supreme Court.

For the reasons discussed herein, I DENY the petition.

## I.  Factual Background and Procedural History

The opinion of the Supreme Judicial Court ("SJC") in *Commonwealth v. Rodriguez*, 437 Mass. 554 (2002) sets forth the facts in detail.  "Because the specific facts of the crime underlying this case are not particularly relevant, [I] recount them only briefly, with the rebuttable presumption that factual findings by the state courts are correct."  *Clements v. Maloney*, 485 F.3d 158, 159, 2007 (1st Cir. 2007) (citing 28 U.S.C. § 2254(e)(1)); *see Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002).

The victim, Kenia Melo, died of multiple stab wounds and the resultant blood loss she suffered on April 13, 1997 during the course of a robbery in a small convenience store she and her husband owned in Chelsea, Massachusetts.  *Rodriguez*, 437 Mass. at 556, 557.  The petitioner's roommate informed the police of certain behavior on the part of the petitioner and certain unusual circumstances in the days following the crime, including incriminating statements the petitioner made to her and to his father in telephone conversations, the existence of scratches on the petitioner's face on the day of the robbery, and the fact that a large knife was missing from the roommate's kitchen set.  *Id*. at 557-58.  On June 3, 1997, a grand jury returned an indictment charging the petitioner with armed robbery and murder in the first degree.

At trial, the petitioner testified about alcohol and drug use on the night of April 12 into the morning of April 13, but his testimony about his having been on "an all-night drinking and drug binge . . . into the morning hours" was contradicted by three witnesses. *Id.* at 558 & n.3. The petitioner called as an expert a forensic psychologist, Dr. Alan Brown, "to support [the petitioner's] claim that he lacked specific intent to kill or commit robbery." *Id.* at 558. According to the SJC, Dr. Brown:

> testified that, assuming a person had ingested a large quantity of crack cocaine, marijuana, and alcohol without sleep and without food, "it would be extremely unlikely that he would be able to form the specific intent" to rob or kill. He also testified that a person having ingested the quantities of drugs and alcohol claimed by Rodriguez would be impaired in his ability to think through problems, make rational choices, and remember his thoughts and actions.

*Id.* at 559.

On cross-examination, without specifically asking for his opinion "to a reasonable degree of medical certainty," the prosecutor "posed a series of hypothetical questions to Dr. Brown concerning whether certain actions and behavior, if engaged in by an individual, would be 'consistent with' someone who 'knew what he was doing' or 'understood what he had just done.'" *Rodriguez*, 437 Mass. at 562-63. The judge overruled objections to these questions by the petitioner's counsel. *Id.* at 563. Also on cross-examination of Dr. Brown, the prosecutor asked a hypothetical question to which the petitioner's counsel objected on grounds unrelated to consciousness of guilt. *Id.* at 564. The judge expressed her own concern that the question (and answers that might be elicited) could "be in the nature of consciousness of guilt." *Id.* The witness never answered the question and the prosecutor "immediately stopped the line of questioning." *Id.* At the close of trial, the judge instructed the jury concerning, *inter alia*, the presumption of innocence and expert testimony. I discuss these instructions in detail below.

3

Following the trial, the petitioner was convicted of murder in the first degree on the theory

of felony-murder and sentenced to life in prison without the possibility of parole.  *Rodriguez*, 437

Mass. at 555.[1]  The trial judge denied his motion for new trial.  The petitioner filed a timely appeal

from this ruling, and the appeal was docketed in the SJC and consolidated with the direct appeal

of the conviction.  The SJC affirmed the conviction, and the petitioner filed the instant petition for

writ of habeas corpus on July 15, 2005.

## II.  Discussion

### A.    Standard of Review for Claims Properly Preserved

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254, the standard of review in a habeas case is deferential to state courts.  *See Williams v.

Taylor*, 529 U.S. 362, 404 (2000) (citing with approval Justice Stevens's observation in his

concurring opinion) (a primary purpose of AEDPA is "to curb delays, to prevent 'retrials' on

federal habeas, and to give effect to state convictions to the extent possible under law").  The

statute provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any claim
> that was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court of the
> United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the

---

[1] Although the petitioner was also initially convicted of and sentenced on the underlying
felony of armed robbery, that conviction and sentence were later vacated by the trial judge as
duplicative of the felony-murder conviction.  *Commonwealth v. Rodriguez*, 437 Mass. 554, 555 &
n.1 (2002).

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "A state-court decision [is considered] contrary to [the Supreme Court's]

clearly established precedent if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases," *Williams*, 529 U.S. at 405, or "if the state court confronts a set

of facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [Supreme Court] precedent."  *Id.* at 406.  Similarly,

a "state-court decision that correctly identifies the governing legal rule but applies it unreasonably

to the facts of a particular prisoner's case certainly would qualify as a decision 'involv[ing] an

unreasonable application of ... clearly established Federal law.'"  *Id.* at 407-08.  Under §

2254(d)(1), however, "a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable."  *Id.* at 410.

**B.      Preserved Claims**

The defendant advances as grounds for habeas review several alleged errors to which he

objected at trial: the solicitation of opinions during cross-examination of the defense expert,

where the prosecutor failed to ask whether the opinions were based "on a reasonable degree of

medical certainty";  the impermissible assumption of facts not in evidence by the prosecutor in

both his cross-examination of the expert and his closing statement; and appeals to juror sympathy.

I discuss each claim in turn.

1.  Cross-examination of the defense expert.

The petitioner argues that in posing several hypothetical questions, "the prosecutor failed

to ask the defense expert whether the opinions elicited during cross-examination were based on a 'reasonable degree of medical certainty,' thereby rendering those opinions inadmissible." *Rodriguez*, 437 Mass. at 562-63.  The respondent argues that this claim is unexhausted and, in the alternative, that the claim is insufficient to merit habeas relief.

As with all habeas claims, the claim now under examination must be one as to which the petitioner exhausted his state court remedies before bringing his federal habeas petition.  *Baldwin v. Reese,* 541 U.S. 27, 29 (2004).  *See Mele v. Fitchburg Dist. Court*, 850 F.2d 817, 819 (1st Cir. 1988) ("a federal court should not consider questions posed in a habeas petitions until the 'power of the highest state court in respect of such questions' has been exhausted" (quoting *United States ex. rel. Kennedy v. Tyler*, 269 U.S. 13, 17 (1925))).  *See also Strickland v. Washington*, 466 U.S. 668, 684 (1984) (observing that exhaustion rule should be strictly enforced).  "In order to exhaust the claim, the petitioner must present the federal claim fairly and recognizably to the state courts, meaning that he must show that he tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question . . . . This means that the legal theory articulated in state and federal courts must be the same." *Clements*, 485 F.3d at 162 (citations, internal quotation marks, and indicated alterations omitted).

The determination whether a federal claim has been properly presented to, and exhausted in, the state court is not an exact science; rather it is a "probability . . .  reflected . . . by trappings-specific constitutional language, constitutional citation, appropriate federal precedent, substantive constitutional analogy, argument with no masking state-law character, and the like." *Nadworny v. Fair*, 872 F.2d 1093, 1101 (1st Cir. 1989).  "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a

similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so." *Baldwin*, 541 U.S. at 32.

A petitioner can meet the exhaustion requirement by showing that, in his papers to the appropriate state court he (1) cited a provision of the federal Constitution, (2) presented a federal constitutional claim in a manner that fairly alerted the state court to the federal nature of the claim, (3) cited federal constitutional precedents, or (4) claimed violation of a right specifically protected in the federal Constitution. *Clements*, 485 F.3d at 162. In addition, in some situations a petitioner who, in his papers to the appropriate state court, cites state court decisions that rely on federal law or articulate a state claim that is, for all practical purposes, indistinguishable from one arising under federal law may satisfy the exhaustion requirement. *Id.* In this case, the petitioner's citation only to state court cases in his brief in support of the petition[2] and the SJC's discussion of, and reliance on, state court decisions weigh against a finding that this claim has been exhausted. *See Gagne v. Fair*, 835 F.2d 6, 7-8 (1st Cir. 1987). In *Gagne*, the First Circuit explained:

> And although the state court need not have addressed or decided a petitioner's federal claim in order for the exhaustion requirement to be met, *see Kines v. Butterworth*, 669 F.2d 6, 12 (1st Cir.1981), *cert. denied*, 456 U.S. 980 (1982), [there is] additional support for [the] view that the Massachusetts courts were not alerted to [any] federal constitutional claim[] [in connection with this alleged error] in the fact that the court opinions analyze the issue not from a constitutional standpoint but strictly on the basis of Massachusetts cases and federal cases grounded on the supervisory authority of appellate courts.

*Id.* at 8.

---

[2] As the respondent points out the petitioner's brief in support of habeas relief is identical to his brief before the Supreme Judicial Court ("SJC").

Where a habeas petition contains both exhausted and unexhausted claims, the federal habeas court has discretion to take one of several actions. *See Rhines v. Weber*, 544 U.S. 269, 274-79 (2005). The court may allow the petitioner to dismiss voluntarily any unexhausted claims and proceed with the petition, dismiss the petition without prejudice to allow the petitioner to return to state court to exhaust the unexhausted claims, or – in limited circumstances – utilize a "stay and abeyance" procedure to allow the petitioner to return to exhaust as yet unexhausted claims without running afoul of the one-year statute of limitations provided by 28 U.S.C. § 2244(d). *Id.*; *see Clements,* 485 F.3d at 161 n.5.

Mindful of the closeness of the question of exhaustion as to the present claim, I will assume, without deciding, that the SJC was alerted adequately to the claim's federal nature, *see Nadworny*, 872 F.2d at 1098, and proceed to the merits of the claim. *See Rhines*, 544 U.S. at 277 (where unexhausted claims are "plainly meritless," an application for a writ of habeas corpus "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available" in state courts (quoting 28 U.S.C. § 2254(b)(2))). As the SJC concluded, "Dr. Brown's answers to the questions conformed to . . . language expressly condoned" in an earlier Massachusetts case. *Rodriguez*, 437 at 563. Thus, there was no state evidentiary error. Even if there had been an error, the petitioner would not be able to show, by reference to the record as a whole, that the error reached the level of a constitutional violation by "so infus[ing] the trial with inflammatory prejudice that it render[ed] a fair trial impossible." *Petrillo v. O'Neill*, 428 F.3d 41, 44 n.2 (1st Cir. 2005). The claim regarding the form of questions put to the expert, therefore, is without merit as a constitutional matter. *See id. See also Evans v. Verdini,* 466 F.3d 141, 145 (1st Cir. 2006) (noting that a violation of a rule of evidence does not itself amount to a

constitutional violation, where there is no showing of fundamental unfairness constituting a denial of due process).

2.  Assumption of facts not in evidence.[3]

The petitioner argues that the prosecutor impermissibly assumed facts not in evidence (and not inferable from the evidence) in his questioning of the expert witness on cross-examination and in his closing arguments.[4]

---

[3] It is unclear from the SJC's opinion whether the petitioner objected at trial to the assumption of facts not in evidence.  Although the petitioner argues that his counsel was ineffective in failing to object or move to strike portions of the prosecutor's questioning of the expert witness and to the prosecution's closing statement on this ground, the SJC did not specify that it was reviewing these matters solely for a "substantial likelihood of a miscarriage of justice." *See Horton v. Allen*, 370 F.3d 75, 81 (1st Cir. 2004) (noting that limited review by the SJC of a claim for a substantial miscarriage of justice, where the issue on which the claim is based has not been preserved by a contemporaneous objection, "does not work a waiver of the contemporaneous objection requirement").  Furthermore, the respondent does not suggest that this argument is procedurally barred and instead addresses it on its merits.  For these reasons, I treat this claim as properly preserved.

[4] Specifically, the petitioner challenges the following references to a baseball cap and a bag found at the market, as described by the SJC:

> During his cross-examination of Dr. Brown, the prosecutor posed a hypothetical question about a scenario in which a person "goes into a kitchen, grabs a knife, *takes a bag, takes a hat* and heads out the door" (emphasis added [by the SJC]).  In his closing argument the prosecutor argued: "[The defendant] entered the store with a knife and *a bag, and a hat for a disguise . . . He took the baseball hat.  He took the bag*, the tools of the trade of a robbery, and he headed out the door. . . I ask you, Ladies and Gentlemen, when an individual walks into a store armed with a knife and *a bag of sufficient room to carry money, and a hat to cover a distinctive scar over his eye*, is that consistent with somebody who doesn't know what he is doing . . . ?" (Emphasis added [by the SJC]).

*Rodriguez*, 437 Mass. at 565.

9

In response to the petitioner's arguments that "there was no evidence to support the claim that he purposely wore the cap to disguise himself or to cover a distinctive scar [and that] there was no evidence linking Rodriguez to the bag and the bag was not admitted in evidence," the SJC cited the "uncontested existence of a distinctive scar on Rodriguez's head, the overwhelming evidence linking the cap to Rodriguez, and the cap's use in the robbery,"[5] and "ample evidence that the bag in question was found at the scene of the robbery, and that it belonged to Santiago, with whom Rodriguez lived." *Id*. at 565-66. The SJC did not err in concluding that "the prosecutor's statements were properly based on the facts in evidence and inferences permissibly drawn therefrom,"[6] *id*. at 565, and the court certainly committed no error of constitutional dimension. *See Darden v. Wainright*, 477 U.S. 168, 181 (1986) (under narrow due process standard of review on writ of habeas corpus, "relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process") (internal citation omitted).

---

[5] At trial, one witness testified that on the morning of the robbery, she observed a man wearing a baseball cap walk into the market and shortly thereafter, she saw the same man leave the market without the baseball cap, counting money. *Rodriguez*, 437 Mass. at 556. In addition, as she stood bleeding after the attack, the victim told her husband that the man who had stabbed her had left his baseball cap in the market. *Id*. at 556-57.

[6] In so concluding, the SJC relied on *Commonwealth v. Lamrini*, 392 Mass. 427, 432 (1984) ("In analyzing a claim of improper argument, the prosecutor's remarks must be viewed in light of the entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial" (internal citation omitted)). This analysis comports with the Supreme Court's admonition that a prosecutor's remarks must be "viewed in context [to determine] whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985).

10

3. Appeals to Juror Sympathy.[7]

The petitioner claims that the prosecutor made improper appeals to the jurors' sympathies in his opening statement and closing argument by referring to the victim's husband and children. The content of these statements is recounted in detail by the SJC, *see Rodriguez*, 437 Mass. at 566-67, which concluded that the "evidence at trial bore out each of the claims in the prosecutor's opening." *Id*. at 567. The court also determined that "the prosecutor's references to the victim's family and children in his opening and closing were certainly sympathetic, [but] they were not excessive, nor were they the focal point." *Id*. There is nothing in the record to suggest otherwise. *See Commonwealth v. Degro*, 432 Mass. 319, 326-27 (2000) (references to victim's family and children not excessive where properly limited and used to "set the scene"). Because these brief and limited statements did not infect the trial with unfairness, causing the resulting conviction to constitute a denial of due process, the SJC's decision is consistent with, and not an unreasonable application of, clearly established Supreme Court precedent. *See Darden*, 477 U.S. at 181.

## C.    Waived Claims

The petitioner advances several other grounds for habeas relief based on alleged errors to which he did not object at trial: jury instructions concerning the presumption of innocence and expert testimony and the trial judge's alleged failure to strike consciousness of guilt evidence elicited during cross-examination of a defense witness or to give a contemporaneous curative

---

[7] It is not entirely clear from the SJC's opinion that the petitioner objected at trial to what he characterizes as improper appeals to juror sympathy, but the SJC reviewed this matter on the merits rather than for a "substantial likelihood of a miscarriage of justice." The respondent does not suggest that this claim is procedurally barred. I therefore treat the claim as properly preserved. *See* note 3, *supra*.

instruction or a consciousness of guilt instruction.  To succeed on these claims, the petitioner

must meet a more demanding standard than that which applies to claims that have been properly

preserved.  *See Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir. 1995).  "[F]ederal habeas review is

precluded, as a general proposition, when a state court has reached its decision on the basis of an

adequate an independent state-law ground."  *Id*. and cases cited.  Where the defendant fails to

"object in a timely manner at his state criminal trial" to errors he now asserts in his habeas

petition, such failure "may constitute an adequate and independent state ground sufficient to

trigger the bar rule so long as the state has a consistently applied contemporaneous objection

requirement and the state court has not waived it in the particular case by resting its decision on

some other ground."  *Id*.  *See Ortiz v. Dubois*, 19 F.3d 708, 714 (1st Cir. 1994) ("failure to timely

object at trial to an alleged error as required by a state contemporaneous objection rule constitutes

an 'independent and adequate state ground' sufficient to foreclose federal habeas corpus review of

the alleged error" (citing *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).

  As set forth by the First Circuit,

> a state court decision resting upon a finding of procedural default – such as a
> decision rooted in a defendant's noncompliance with an unwaived
> contemporaneous objection requirement – forecloses federal habeas review unless
> the petitioner can demonstrate cause for the default and prejudice stemming
> therefrom, or, alternatively, unless the petitioner can show that a refusal to
> consider the merits of the constitutional claim will work a miscarriage of justice.

*Burks*, 55 F.3d at 716.  "The SJC consistently enforces the rule that unpreserved claims are

forfeited."  *Horton*, 370 F.3d at 81; *see Gunter*, 291 F.3d at 79.  The SJC enforced that rule in the

instant case by reviewing the unpreserved claims only for a "substantial likelihood of a miscarriage

of justice."  *See Rodriguez*, 437 Mass. at 559, 563-64.  As noted earlier, "this sort of limited

12

review does not work a waiver of the contemporaneous objection requirement," *Horton*, 370 F.3d at 81. By applying this standard of review to the asserted errors in this case, the SJC "relied on, and did not waive, the contemporaneous objection requirement." *Burks*, 55 F.3d at 716. Therefore, the "petitioner can succeed in his habeas case [to the extent that the case is based upon procedurally barred claims] only by showing cognizable cause for, and cognizable prejudice from, his procedural default or, alternatively, by demonstrating that the federal court's failure to address the claim on habeas review will occasion a miscarriage of justice." *Id.*

As to the first avenue, "[f]aced by a state-court judgment that rests upon an adequate and independent state ground, a habeas petitioner has the burden of proving both cause and prejudice." *Id.* at 716. "To provide cause, a factor not only must be objectively ascertainable and external to the defense, but also must have brought about the event of default." *Id.* at 717. "Mere attorney error, not amounting to ineffective assistance in a constitutionally significant sense, is insufficient to constitute cause" *Id.* (citations omitted). To demonstrate prejudice, the petitioner must show that his entire trial was infected "with error of constitutional dimensions." *Ortiz*, 19 F.3d at 714 (to establish prejudice, petitioner must demonstrate not "merely" that errors occurring at trial created the possibility of prejudice, but that such errors "worked to his actual and substantial disadvantage" (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982))). "The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness [remains] the central concern of the writ of habeas corpus.'" *Dretke v. Haley*, 541 U.S. 386, 391 (2004) (quoting *Strickland*, 466 U.S. at 697).

The miscarriage of justice standard "is a narrow exception to the cause-and prejudice imperative, seldom to be used, and explicitly tied to a showing of actual innocence." *Burks*, 55

F.3d at 717.  *See Schlup v. Delo*, 513 U.S. 298, 316 (1995) ("Without any new evidence of

innocence, even the existence of a concededly meritorious constitutional violation is not in itself

sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits

of a barred claim.").  Although "a habeas petitioner need not prove his innocence beyond all doubt

in order to reach the safe haven of the miscarriage exception[,] [he must] show a probability that a

reasonable jury would not have convicted but for the constitutional violation." *Burks*, 55 F.3d at

718.  In the absence of any attempt by the petitioner to establish actual innocence, I now review

each of his procedurally barred claims only for cause and prejudice.

      1.    <u>Jury Instructions</u>.

      The contemporaneous objection rule applies to the trial court's jury instructions.  Mass. R.

Crim. P. 24(b) ("No party may assign as error the giving or the failure to give an instruction

unless he objects thereto before the jury retires to consider its verdict, specifying the matter to

which he objects and the grounds of his objection"); *Tart v. Massachusetts,* 949 F.2d 490, 496

(1st Cir. 1991) (taking note of the Massachusetts contemporaneous objection rule as it pertains to

jury instructions, set forth in Mass. R. Crim. P. 24(b)); *Commonwealth v. Gunter,* 427 Mass. 259,

266 (1998) (reviewing claimed errors in jury instructions on presumption of innocence and burden

of proof to which defendant did not object at trial "by the standard whether they create a

substantial likelihood of a miscarriage of justice").  The rule has been consistently applied by the

SJC to claims of error in jury instructions.  *See Tart*, 949 F.2d at 496; *Gunter*, 427 Mass. at 266.

*See also Lynch v. Ficco*, 438 F.3d 35, 45 (1st Cir. 2006) (noting that the SJC consistently

enforces the rule that unpreserved claims are forfeited and that the SJC's limited review of

unpreserved asserted errors in jury instructions only for a substantial likelihood of a miscarriage of

justice is not a waiver of the contemporaneous objection requirement).

Because the petitioner did not object to the trial court's jury instructions contemporaneously, the SJC evaluated his claims of error in those instructions to determine whether they created a substantial likelihood of a miscarriage of justice. The court thus did not waive the contemporaneous objection rule. *See Lynch,* 438 F.3d at 45. Accordingly, the absence of a contemporaneous objection to the jury instructions constitutes an independent and adequate state-law ground for denying habeas relief, unless the petitioner can establish that he is entitled to review under the cause-and- prejudice standard. *See Burkes*, 55 F.3d at 716.

As the respondent points out, however, the petitioner has made no attempt to show cause for, or prejudice arising from, the petitioner's failure to object to jury instructions concerning the presumption of innocence, expert testimony, or consciousness of guilt. Nor could he meet this high standard for these procedurally barred claims. Although attorney error of sufficient magnitude may constitute cause to excuse procedural default, such is the case only where the attorney's performance was so deficient that it deprived the petitioner of effective assistance of counsel. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). As I explain below, the petitioner did not receive ineffective assistance of counsel. Moreover, he cannot meet the considerable burden of demonstrating that he was prejudiced by jury instructions that infected his entire trial "with error of constitutional dimensions." *Ortiz*, 19 F.3d at 714.

2.     Consciousness of guilt evidence.

Although he did not object at trial, the petitioner argued before the SJC, and presses the claim here, "that the prosecutor attempted to elicit evidence relating to consciousness of guilt in his cross-examination of the expert witness, and that the judge erred in failing to strike the

15

evidence and in not giving either a curative instruction or a consciousness of guilt instruction

during the cross-examination." *Rodriguez*, 437 Mass. at 563.  The SJC reviewed "any error for a

substantial likelihood of a miscarriage of justice." *Id.*  Again, such a review does not waive the

contemporaneous objection requirement. *Horton*, 370 F.3d at 81.  The failure of the petitioner to

impose a contemporaneous objection to any asserted attempt by the prosecutor to elicit evidence

of consciousness constitutes an independent inadequate state-law ground that bars habeas review.

Moreover, the circumstances in which the consciousness of guilt problem arose at trial

precludes any claim by the petitioner to entitlement to habeas review under the cause-and-

prejudice standard.  The petitioner bases this claim on a hypothetical question posed by the

prosecutor to Dr. Brown on cross-examination.  At the time of the questioning, defense counsel

objected on grounds unrelated to consciousness of guilt. *Rodriguez*, 437 Mass. at 564.  At

sidebar, the judge expressed her own concerns that the question might elicit consciousness of guilt

evidence and as a result, the prosecutor immediately stopped the line of questioning and the

witness never answered the question put to him. *Id.*  The judge then "properly instructed the jury

on consciousness of guilt in her charge." *Id.*  Even if the petitioner's counsel had been ineffective

for failing to object – and as I shall explain, he was not – the petitioner suffered no prejudice as a

result that worked to his "actual and substantial disadvantage." *See Ortiz*, 19 F.3d at 714.

**D.     Ineffective Assistance of Counsel**

As discussed above, the petitioner's failure to object, at trial, to several asserted errors

requires that he meet the higher cause and prejudice standard in order to demonstrate that he is

entitled to relief. *Compare Burks*, 55 F.3d at 716 (setting forth standard for procedurally barred

claims) *with Williams*, 529 U.S. at 407-08 (describing standard for preserved claims).  Although

the petitioner did not fashion his argument in this manner, constitutionally defective performance of counsel may satisfy the cause requirement. *See Coleman*, 501 U.S. at 752.

The petitioner argued before the SJC, and argues now, that his trial counsel was ineffective because of counsel's failure to object to what the petitioner characterizes as erroneous and prejudicial jury instructions on the presumption of innocence and the use of assumed facts in questioning the expert witness, counsel's failure to object and move to strike each of the prosecutor's references to the defendant's wearing a hat as evidence of his intent to disguise himself, and to the prosecutor's allegedly improper sympathy appeals. *See Rodriguez*, 437 Mass. at 568. The SJC rejected this argument, noting that the petitioner's "claimed 'failures' of counsel all relate to alleged errors at trial that [the court had] determined were not errors at all." *Id.* As I shall explain, the SJC's decision was neither contrary to, nor an unreasonable application of, clearly established federal law as determined by the Supreme Court. *See* 28 U.S.C. § 2254(d).

Under *Strickland*, a petitioner claiming ineffective assistance of counsel must establish both that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment [and that] counsel's errors were so serious as to deprive the defendant of a fair trial." 466 U.S. at 687. In essence, for a convicted defendant to succeed in establishing that counsel's assistance was so defective as to require the setting aside of a conviction, the defendant first must show that counsel's performance was deficient. *Id.* Absent such a showing, there is no need to evaluate any question of prejudice. *See id.* It is with these principles in mind that I now turn to each of the petitioner's asserted grounds for error.

1. Jury instructions

Supreme Court precedent (and Massachusetts case law) requires that any error in a jury

instruction, if one exists, must be evaluated in the context of the instruction as a whole. *See Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) (challenged jury instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge"); *Gunter*, 427 Mass. at 267 ("Error in a charge is determined by reading the charge as a whole, and not by scrutinizing bits and pieces removed from their context" (citation omitted)).

The trial judge's instructions to the jury regarding the presumption of innocence in the present case are set forth in the margin.[8]  As the SJC observed, a statement to the effect that when the Commonwealth begins to introduce its evidence the "'presumption in favor of innocence may begin to disappear,' while not preferred, [is] simply a way of conveying to the jury that it takes evidence to overcome the presumption of innocence." *Rodriguez,* 437 Mass. at 560.  Given the remainder of this instruction, in combination with the judge's instructions to the jury at the beginning of trial, the judge "adequately informed the jury that the presumption of innocence remained throughout the entirety of the case." *Id*.  *See Cupp*, 414 U.S. at 146-47.  Accordingly, the petitioner's counsel did not err in failing to object.  *See id*. at 147.

The judge's instructions to the jury as to the evaluation of expert testimony is set forth in

---

[8] The judge instructed the jury as follows:

> "The concept of presumption of innocence means exactly what it says.  It means that the Commonwealth must prove the [d]efendant guilty of . . . these offenses beyond a reasonable doubt, and a [d]efendant will have the benefit of that presumption of innocence, unless and until the Commonwealth has proven each and every element of the crime charged by that standard.  It is only when the Commonwealth begins to introduce its evidence that this presumption in favor of innocence may begin to disappear.  If the evidence against him goes in, the presumption may grow less and less strong, but it is for you to determine, based upon all the evidence, whether or not the Commonwealth has overcome that presumption."

*Rodriguez*, 437 Mass. at 560.

18

the margin.[9]  The judge's  instructions in this case are similar to model instructions often relied

upon by lawyers and judges in Massachusetts, with one exception: the trial judge referred to

assumed facts as having been "proven" rather than "true."[10]  *Rodriguez*, 437 Mass. at 561.  In the

context of the judge's charge as a whole,[11] the SJC "reject[ed] Rodriguez's argument that the jury

could have been misled into believing that the burden of proof shifted to him on any element of

the offense."  *Id*. at 562.  The SJC's determination that the judge's instructions did not amount to

"improper burden shifting on the element of specific intent," *id*., given the remainder of her

---

[9] The judge instructed the jury as follows:

> "The testimony of an expert may be helpful in determining issues [that] are beyond your everyday experience.  However, an opinion given by an expert should be disregarded if you find the assumptions upon which it is based have not been proven or if you determine that the opinion is no more than mere speculation or guess from subordinate facts which do not adequately support the conclusion reached . . . However, you may accept the opinion of an expert where you find the basic facts to have been proven, and the way you find that those basic facts give adequate support to the expert opinion is for you to decide."

*Id*. at 561.

[10] After examining the instructions given by the judge and comparing them with Massachusetts Superior Court Criminal Practice Jury Instructions and a widely known treatise on the subject of Massachusetts evidence, the SJC concluded:

> In a case such as this one, where the expert opinion was based on hypothetical questions concerning the likely effect on the defendant of the ingestion of certain amounts of drugs and alcohol, under certain conditions, "[t]he jury should, on request, be instructed that it may give weight to the expert's opinion only if it finds all of the assumed facts [here, that the drugs and alcohol were consumed as and when claimed] to be true."

*Id*. (quoting P.J. Liacos, Massachusetts Evidence § 7.73(b), at 411 (7th ed. 1999)).

[11] The judge instructed the jury to the effect that a defendant "is not required to prove to you an impairment of his mental capacity.  The burden remains always on the Commonwealth to prove . . . in this instance that the [d]efendant had the mental capacity necessary for the various crimes . . ."  *Id*. at 562.

instructions, comports with established federal law directing a court to evaluate any error in the context of the overall charge. *See Cupp*, 414 U.S. at 146-47. My review of the instructions leads me to the same conclusion: in the context of the entire jury charge, the substitution of "proven" for "true," did not shift the burden of proof to the defendant. Even assuming, without deciding, that counsel erred in failing to object to this instruction, any error was not "so serious as to deprive the defendant of a fair trial," *see Strickland*, 466 U.S. at 687, and therefore was not sufficient to deprive the petitioner of effective assistance of counsel. *See Murray*, 477 U.S. at 488.

      2. Other asserted errors.

      As to consciousness of guilt evidence, because, as I explained above, the judge intervened sua sponte before the jury was exposed to any such evidence during cross-examination of the defendant's expert witness, there was nothing to which the petitioner's counsel should have objected. He did not err, therefore, in failing to object to the prosecutor's questioning on these grounds, in failing to request that the evidence be stricken, or in failing to ask that the judge give a curative or consciousness of guilt instruction during the cross-examination. Absent error, there cannot be ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687.

      The petitioner is correct that his counsel failed to object or move to strike the prosecutor's use of assumed facts in questioning the expert witness, references to Rodriguez wearing a cap to disguise himself, or sympathy appeals to the jury. I have reviewed these claimed errors, however – as did the SJC – on their merits. As I have explained, these asserted errors were not errors at all. The defendant's counsel, therefore, cannot have been ineffective for failing to object to them. *See id*. (counsel's assistance cannot have been so defective as to require reversal of a conviction if such assistance was not, in fact, deficient). The SJC's conclusion that where

"claimed 'failures' of counsel all relate to alleged errors at trial that . . . were not errors at all . . .,

the ineffective assistance of counsel claim based on counsel's failure to object to those same

errors must fail as well," *Rodriguez*, 437 Mass. at 568, was neither contrary to, nor an

unreasonable application of, established federal law.  *See Strickland*, 466 U.S. at 687; 28 U.S.C. §

2254(d).

### III.  Conclusion

For the foregoing reasons, Rolando Rodriguez's petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 is denied and the petition is dismissed.  The clerk shall enter

judgment for the respondent.  I add one final point for the consideration of the petitioner.  I am

unlikely to grant a certificate of appealability on any of the claims raised in the present petition,

given (1) my determination that none of the claims raises a problem of constitutional dimensions;

(2) the deferential standard of review applicable, on a habeas petition, to the state court's

resolution of constitutional claims; and (3) the stringent requirement for the issuance of a

certificate that the petitioner make a substantial showing of the denial of a constitutional right.

*Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003).

SO ORDERED.

Date:   July 5, 2007


                                                    /s/ Reginald C.  Lindsay_____
                                                    United States District Judge

21